v. Valdez, United States v. Valdez, United States v. Valdez, United States v. Valdez, 22-3025. Uh, counsel for appellate if you'd make your appearance and proceed please. Good morning Your Honors. My name is Paige Nichols and I am here on behalf of the appellant Mr. Hector Valdez. We're here today to try to work out the answer to a single legal question and that is whether the district court, as a matter of law, aired when it put the burden on Mr. Valdez to show prejudice in order to establish his Sixth Amendment claim. And before I get into this question about who bears the burden on prejudice here, I want to make crystal clear what this Sixth Amendment claim is. It is a claim that before Mr. Valdez was sentenced, the prosecution team became privy to his attorney-client communications intentionally and without a legitimate justification. So these are the worst kinds of intrusions that we're talking about here when we're asking who bears the prejudice burden in a pre-sentencing intrusion. These are the kinds of intrusions that rupture the framework of our adversary system and this court recognized in Orduno Ramirez that these kinds of pre-sentencing intrusions may pose a significant risk to sentencing proceedings and should be taken seriously. So how do we know who bears the burden when it comes to prejudice if prejudice is a necessary part of the calculus here? Could I just ask, you say there's this single issue of who bears the burden and however that gets worked out, do you agree that a determination of prejudice is necessary for there to be a violation? Well, we stand by our original position that even pre-sentencing intrusions should be structural error. Okay. I just want to make sure I'm clear about that. I understand your position there, but let me back up and explain why I'm even asking these questions because at one point in your brief, it gets into this, there's some discussion of harmless error or there's discussion of Chapman and Brecht and so forth and so the question I'm getting at is before you even get there, doesn't there need to be prejudice for there to be a violation? Is being clear about that. No, but it may not matter for our purposes here. I say no because, well, for a lot of reasons. I'm trying to figure out which path to go down first here. The court, this court in Spaith says these are not Strickland-like claims and Strickland claims are really the only ones where, the only Sixth Amendment claims where prejudice is a part of the Sixth Amendment claim itself and so we're in a different zone here where once you have that privy to factor in play, that's where we're claiming the Sixth Amendment error occurs because that it's the intrusion itself, but for our purposes here in this pre-sentencing intrusion area, it may be semantic because even if prejudice is part of the Sixth Amendment, it's not enough to show the absence of prejudice like other circuit courts have done, the Danielson Court in the Ninth Circuit, the Mastroianni Court in the First Circuit and the cases they discuss. The courts seem to consistently recognize that here we have who stands to benefit from this intrusion, the government, who can tell us whether they did benefit from this intrusion, the government. That's it and if we go directly to Chapman, Chapman tells us and we'll talk about Chapman versus Brecht I'm sure soon, but Chapman tells us the beneficiary of the error should be the one who shows that it was harmless and by the way, Chapman did involve prosecutorial misconduct. So I recognize we're in 2255 land here. And why doesn't that make a difference? And this court has held that Brecht applies to some 2255 claims on finality grounds. You know, Brecht was a 2254 case. It had comity concerns in mind and finality concerns. And not only our court, but the Supreme Court has made clear that Brecht is the governing standard if we ever get there for harmlessness in the 2255 context. So what does Chapman have to do with this? Chapman, I think, just sets up the issue in the first instance. I think in order to understand what we're doing in a 2255, we have to know what we're doing on a direct appeal. But also this court could find reasonably that Brecht, I'll say this then I'll move on to the rest of my Brecht argument, but this court could reasonably find that Brecht doesn't apply in a 2255 to a claim like this, which is only getting its first airing in a 2255 because it was hidden government misconduct. But if Brecht does apply, we still should be putting the burden on the government. This court has said that in a 2255 under primarily the Supreme Court's case mechanic, which interprets Brecht, the defendant does not bear the burden of showing prejudice in a 2255. The burden lies with the government. This court said so in United States versus Garcia in a published decision, has said so in other unpublished decisions that the burden shifts to the government to show that an error is harmless. And it's not under the Chapman standard in those cases, but under the Brecht standard. But the category here is not 2255. The category here is the Sixth Amendment. And Ordono itself says that the default in the Sixth Amendment context is that the defendant bears the burden. And going one step further, that default has been applied where the does it the default apply a fortiori here if it would apply in that other context? Well, I am not sure what the where this default. Let's try footnote six of Ordono. And it says that that has been the principle that has been applied in these cases in the Sixth Amendment context. And I believe that those sections of Ordono Ramirez are really looking at the Strickland type cases. And those cases are sort of their own category of cases. And in the in Gonzalez-Lopez in the U.S. Supreme Court, the counsel choice case, the majority made it clear that that Strickland is unique in putting that prejudice burden on the defendant and making it a part of the constitutional violation in the first place. And I apologize. I was talking about footnote 21, which says in most cases, the defendant alleging a Sixth Amendment violation must show prejudice. And then it goes on to talk about the fact that generally that has been the principle that has been applied, footnote 21. And so as it relates to that, if in most cases the defendant bears the burden in the Sixth Amendment context, in most cases the risk of prejudice is higher than it is in the post plea context. Why would in the post plea context one not apply that general principle? So again, those most cases are ineffective assistance of counsel cases. And this court also recognized in spate that these are not ineffective assistance of counsel claims. This is a different kind of Sixth Amendment claim. So it gets treated differently. That statement was made in a case that materially looks just like this case. And that statement was made in that case. It's not made in Strickland. It's not made in any other case. It's talking about what would generally happen in this case. The court didn't feel the need to do it in this case. Right. And I think that we have better litigated the issue in this case and that because the court didn't reach the question in Orduno-Ramirez, it remains open, which is why we got a Certificate of Appealability, I believe, in this case here. And so I lost my train of thought there. But again, I want to emphasize, and I think the discussion in Gonzalez-Lopez is quite clear about the difference between ineffective assistance of Sixth Amendment and other claims like counsel of choice or state interference with counsel. In fact, Strickland itself said some kinds of state interference with counsel are presumed to result in prejudice. And citing, among other things, Geters, which is the case where counsel wasn't allowed to consult with a client, but that was state interference with counsel. And the defendant did not have to show prejudice in order to show the Sixth Amendment violation in Geters or the counsel of choice violation in Gonzalez-Lopez. So I accept the proposition that in ineffective assistance of counsel cases that are Strickland-style cases, that the harm is part of the Sixth Amendment claim and that the defendant must show harm. But it doesn't make sense here where, and it makes sense there because the defendant is the only one who can know what would I have done differently had my counsel acted competently, right? That's the defendant sharing what the defendant's own strategy would be there. But here we have the opposite circumstance. We have the question is, how did the government use the information it was privy to? And that is the reason we have to put the burden on the government. If I may, I'd like to reserve some time for rebuttal unless the court would want to ask more questions at this point. Please. Thank you. Good morning, Your Honors. Brian Clark for the United States. May it please the court. When a defendant claims a violation of a Sixth Amendment right to the assistance of counsel, Judge Holmes, you're exactly right. The default rule is that the defendant is required to prove the prejudice element of his Sixth Amendment claim. And let me go one step further, and I want to be clear, and maybe I misunderstood reading some of these cases. I understood Orderno to part of the through line there to be part and parcel of the Sixth Amendment violation is the existence of prejudice, irrespective of who has the burden to show it. Is that not your understanding? That's absolutely correct. And that's why I think Mr. Valdez's arguments regarding Chapman are entirely beside the point. And this gets partly to your question, Judge Matheson, because Chapman, as you all well know, is a doctrine of direct appellate review. And that harmless error review kicks in only after the defendant has shown that there is an established constitutional violation. But here, we're talking about a question of whether a constitutional violation has taken place in the first place. And this court, the question before it, is which party should bear the burden with respect to prejudice in determining whether there was a Sixth Amendment violation at all. So the discussion of Chapman, as well as Brecht, I think is a little bit beside the point. Our discussion of Brecht in our response brief was just responding to Mr. Valdez's reliance on Chapman, because at the very least, at the end of the day, if this court were to look beyond the Sixth Amendment context and start looking to other doctrines to determine how to allocate the burden with respect to prejudice, in terms of the element of the Sixth Amendment claim, we think Brecht is where this court should turn, because this is obviously on collateral review. Well, counsel, in a Strickland ineffective assistance of counsel case, let's say the defendant shows deficient performance and shows prejudice, is there need for a harmless error analysis at that point in any event? Isn't showing prejudice the end of the road and Brecht doesn't, Chapman, Brecht, whatever, just don't come into play? I think that's right. And that's why I think sort of to really just to summarize and to focus, sort of be able to put our fingers on what we're talking about here, we're talking about the prejudice element of the Sixth Amendment claim before you get into Chapman, before you get into Brecht. And I think because there is a prejudice element of the Sixth Amendment, it really kind of makes Chapman, Brecht, and these other, you know, sort of doctrines or cases beside the point. And I think that was the point that was made in Gonzalez, Lopez, that when there is a prejudice element of the underlying constitutional claim, it kind of makes those other harmless error doctrines sort of beside the point. Well, back to the prejudice issue then, and he has the burden. It's an issue we did leave open in Orduno. Why wouldn't the government have better access to evidence on the issue of prejudice than the defendant? Well, here the answer is that actually Mr. Valdez has, you know, the main piece of evidence that is central to his claim, and that is the two soundless videos that form the very basis of his claim. Here the prosecutor has sworn an affidavit saying that he didn't know the videos existed at the time of sentencing, and he never viewed them. In the 2255 litigation, the litigation team that's been defending this claim has never been given access to those recordings. So really, at least for purposes of this case, Mr. Valdez is the only one of the two parties that has access to the evidence that is essential to proving his claim. And in addition to that, I would point this case to an analogous context, which is the Brady context. There the defendant is required to prove materiality, even though it's the prosecutor who is alleged to have, you know, suppressed material exculpatory evidence, and there's no problem with putting the burden on the defendant in that context. That strikes me as being a different kind of analogy. In the Brady context, what we're talking about is whether this evidence would have been useful at trial, and how it affects the fairness of trial. It seems to me this is a different question, because it is not just the question of what did they do per se with that specific piece of evidence. In other words, did they try to introduce something related to it? Did they try to produce a witness? What you've got going on here that's different is strategy. What did the prosecutor do? What choices did the prosecutor make because he or she saw the tape, or heard, in another context, the audio recording? What did they do in terms of mapping out their sentencing strategy? And even though Orderno sort of alludes to this, but doesn't talk about it specifically, prosecutors talk to probation officers all the time about what should be in the pre-sentence report or not, and maybe they make certain suggestions based upon what they know, and what they should not know. And so the point I'm making is that dimension, it seems to me, much more so than necessarily who's got the evidence right now, is a question as it relates to who has more knowledge. Because the defendant is never going to know, absent some affidavit from the government or some showing from the government, the defendant's going to never know what choices the prosecutor made or did not make because of what they illegally knew. Sure. So one more point just specific to this case, what you just described is not this case at all. And in some ways it really points up the reason why this court should not adopt any sort of categorical rule. Because in this case, I just reiterate, the prosecutor never viewed the videos. The government doesn't know what is on the videos except for what Mr. Valdez himself has said. And so in this case, it really doesn't make sense to place the burden on the government when even Mr. Valdez himself, having all that information, hasn't even alleged prejudice. And the district court, which reviewed the entire record, found that there was no threat at all to the fairness or reliability of Mr. Valdez's sentencing proceeding. I'm sorry, I didn't mean to cut you off. I get that. And I get, as it relates to this case, the potential for these dangers are not salient. But it would seem to me that if one's looking, even in this case, the burden could be placed on the government. The government would just have an easy burden. I mean, just to say, I don't know anything. But in another case, and that's what I'm trying to allude to, whether it really does matter and how significant it is. Because it seems to me that the magnitude of the problem in terms of the party that has the most information, the magnitude of that thing weighs against the question of this default, which I am struggling to understand why that doesn't matter. Even though it's not relevant here, the point is, why shouldn't we adopt that? Right. So backing up and sort of taking the question more broadly, I think that in general, the defendant typically has the burden of carrying, of showing all of the elements of his Sixth Amendment claim. And the defendant has an idea of how he thinks maybe the prosecutor used a particular piece of information or what the prosecutor did or didn't do. And the defendant is not powerless. Because if this issue were to arise in a case, the defendant in his criminal case could ask for an evidentiary hearing, could issue subpoenas for evidence from the government, whether that be affidavits or witness testimony or documentary evidence. And so the defendant has tools at his disposal to to carry the burden of proving the prejudice element of his Sixth Amendment claim. And I would just note that in the Eighth Circuits that do place the burden on the defendant to prove the prejudice element of his Sixth Amendment claim, there doesn't seem to be any real problem with the defendant being able to do that. And by contrast, shifting the burden to the government to prove that the defendant was not prejudiced puts the government in a very difficult position of having to prove a negative and sometimes without the evidence that is most critical to that inquiry. And so I think, again, this case undermines the assumption that typically the government will have the best access. And I also think that in general, a defendant is not powerless to get the evidence that he needs to carry his burden. Well, this case undermines the assumption, too, that it would be difficult for the government to do it because the government has no problem in this case carrying the burden of showing what it knows, right, and showing that there's no prejudice. Right. And that's a fair point. The government was able to prove that the defendant was not prejudiced in this case. And I think that really points up an important point, which is that, you know, in this case, the question of whether to adopt a rebuttable presumption of prejudice really is academic because in this case, under Orduño-Ramirez, which is, in this case, a carbon copy of Orduño-Ramirez, there's no basis for distinguishing this case from that one. The government has proven the defendant wasn't prejudiced. But... And you were anticipating my exact next question. So why should we do that here? I mean, why should we even reach the prejudice issue? I mean, I'm sorry, the allocation of the burden of proof issue here when whether we do or whether we don't, at least it appears, and perhaps I'm missing something, but it appears that there could be no showing, as the district court found, of prejudice. Right. I don't think this court needs to. And I think what is really important, and I mentioned this earlier, but the district court made factual findings after having reviewed the entire record, including the videos, which aren't in the record on appeal for this court to... Counsel, could I just, to clarify your position, a few minutes ago, I think I heard you say something about not needing to formulate a categorical rule. And now we're even discussing whether to formulate any rule. But... So I'm not sure where that leaves us. If we were to go ahead without saying one way or the other in cases going forward, who has the burden, does that mean this is going to be a case-by-case determination for the time being? So I think what this court could do is leave the door open, say that the district court in this case found that no realistic possibility of prejudice was even imaginable on the facts of this case, that the district court found that there was no threat at all to the fairness or reliability of Mr. Valdez's sentencing proceeding, and leave for another day the question of whether a rebuttable presumption of prejudice should apply in the context where a defendant alleges a post-plea pre-sentencing government intrusion. Why do you say rebuttable presumption of prejudice? Isn't this just about who has the burden to show it, period? No, I don't think so. And the reason why I say rebuttable is because in the cases that even Mr. Valdez relies on, the burden initially is on the defendant. The defendant has to make a prima facie showing of prejudice before triggering the presumption, which then can be rebutted by the government. So in that case, just generally, isn't it just the question the defendant has to show that, in fact, there was an intrusion? Not just that there was an intrusion. Oh, well, okay. Go ahead. I'm sorry to interrupt, Your Honor, but that the intrusion, this is important, that the intrusion resulted in the government obtaining the defendant's confidential defense strategy. And here, there's no claim that the government obtained Mr. Valdez's confidential defense strategy. Defense strategy or confidences. I mean, there's a question here whether the government got anything. But I mean, who's going to determine whether it's If the government had listened to audio recordings involving the defendant and his lawyer, incurring his burden, does the defendant have to, would the defendant be required to show that those conversations actually involve defense strategy? Yes. Under Weatherford v. Bercy, the core aspect of the question is whether there was a communication of defense strategy to the prosecution. So discussions about weather or other harmless topics simply don't implicate Sixth Amendment concerns. Well, I would hit a pause button right here and say that it seems to me that the question first, the antecedent question, is who has the burden? What you're talking about are the nuances of what that burden looks like. And to Judge Matheson's point, it seems to me initially, that would be the question. If we're going to do anything at all, we've got to decide who's got the burden. Then we decide whether we're going to adopt these cases that you're alluding to as to what the nature of that burden would be. Those are two different questions. Right. And I think I would begin where I began, which is to say that the default rule is that the defendant bears the burden of proving the Sixth Amendment, proving the prejudice element of his Sixth Amendment claim. Then the question for the court is, okay, in particular contexts, do you want to create an exception to that rule? And, you know, for any number of reasons. And then look at the other, the case law that shows courts that have adopted an exception to that default rule. The courts that have done that have required the defendant to make a prima facie showing of prejudice before the government is required to rebut that presumption. So maybe that threshold showing is pretty low. Maybe it just has to show that the government obtained some information that was usable. But there has to be some prima facie showing that of prejudice before the government has to, you know, come back and rebut the presumption of prejudice. And I seem that my time has expired. Unless there are any further questions, I would just ask the court to affirm. Thank you, counsel. Thank you. I think I have four quick points. The first one is, I don't, the government has not brought to this court a single case from the Supreme Court or any other circuit where all factors we've discussed here are present, privy to attorney-client communications intentionally and without a legitimate justification, where a court put the burden on the defendant to show prejudice. This court would be doing that for the first time. As far as I can tell, there is no precedent for doing that. In fact, we might even be creating a circuit split because we've got these other circuits that are putting the burden on the government for these kinds of intrusions. Number two, I wanted to say, I agree with everything Your Honor said about the difference between this kind of case and the Brady case. And I wanted to add to that, that in Brady, it makes sense to put the burden on the defendant to show materiality because the defendant has to show what they would have done with the evidence that the government withheld, what they would have done with it. Whereas here, we're asking what the government did with the information it got from the communications. So again, it makes sense and is consistent with Brady to put the burden on the government here. So is the prejudice burden part of the claim or does it come after the claim? Again, I think I said earlier, that might be a purely semantic problem here. Maybe it's not, but no, it isn't semantic. Okay, either way, the Ninth Circuit thought it was semantic in the Danielson case. But either way, this court can put the burden on the government, however it views it. At the end of the day, the burden should be on the government. And yes, I agree with, I don't remember if it was Judge Matheson or Judge Holmes who said, once there's a prejudice finding as part of the claim, then we don't, it's true, we don't need to go on to any kind of Brecht analysis because prejudice is already on the table there. Okay, lastly, I just wanted to mention the difference between this case and Orduno-Ramirez in terms of how this court resolves this case is that we took our lesson from Orduno-Ramirez and tried to show this court all of the remaining outstanding factual questions that really ought to be resolved by the district court. Could I just, in that regard, the district court, and I'm quoting from the district court, said that Mr. Valdez has not demonstrated and cannot show, nor can the court imagine, any realistic probability of prejudice. What do we do with that? I mean, do we review it for clear error? Do we review it de novo? Or do, or is that just, what do we do with that statement? Right, so I mean, the easy route is just to say the court applied the wrong standard. Let's send it back for the court to apply the right standard, that it wasn't on Mr. Valdez to show these things. I'd like to point out too, though, it's that statement by the district court feels a little inconsistent with the district court's other rulings, which were that it was going to adopt an adverse inference that the prosecution team was indeed privy to the contents of the communications, and Weatherford itself seems to equate becoming privy to communications with a realistic possibility of prejudice. So the district court's statement that it couldn't imagine a realistic possibility of prejudice doesn't seem to sit well with Weatherford, but at any rate. I think the point that Judge Matheson directly asked is, do you think that's a factual finding or not? In light of the fact that the district court actually looked at the tape and was aware of the affidavit, the court may have a factual finding. I will say, no, the district court made clear it was not relying on the tape in finding that Mr. Valdez did not bear his burden because, remember, the district court just says, just makes a finding that the tape had communicative value and held back, decided not to answer the question of whether it had what the court was calling adversarial value. So the district court says communicative value is what we had to show up front to get through the gate. We showed that, but the court said, any other findings are not pertinent because I'm going to find you didn't show prejudice anyway. So the court does not rely on the contents of the video. It doesn't, in fact, says other findings about the video are not pertinent. And so I don't think that's a factual finding. I think that is just part of it. And then what are the elements that caused the court to make that decision? The affidavit that was before the court? What else? The court looked at just on the surface of sentencing. So really missed those kinds of possibilities that I think this court recognized in Ordino-Ramirez and spoke about this morning, that there are strategic things happening behind the scenes that aren't apparent on the record of what a prosecutor can do with attorney-client communications. And I understand that it may be, it will be an easy show for the government on remand. But I do want to point out as well that one prosecutor of two prosecutors on the case signed an affidavit. The other prosecutor on the case was the one who pulled all these videos in the first place, was the one who claimed to have information from a video in a different case, was the one who worked with this same prosecutor who did sign the affidavit in a case where she, Tomasik, in fact hired a translator to learn more about attorney-client communications. And yet there's no affidavit from that prosecutor. Yes, she withdrew before sentencing, but she had... Well, if she withdrew before sentencing, why is it relevant? I mean, the whole point is what the impact is at sentencing. And if the prosecutor who handled the sentencing, and what we're talking about is prejudice at sentencing, says that he doesn't know anything, he hasn't seen the tape, and he hasn't used the tape, why is it relevant? As this court pointed out just a little bit ago, prosecutors are often giving information to the pre-sentence officer before the pre-sentence report is done. But if that prosecutor had the information, and that prosecutor says he didn't have the information. That prosecutor said he didn't have the information, but the prosecutor who did pull the tapes, who didn't sign an affidavit, I might also mention the district court found the prosecutor who signed the affidavit not credible when he said he didn't know what his co-counsel was doing in a different case. So there are reasons to ask the district court to hold an evidentiary hearing on the affidavit, and on what the other prosecutor did before she withdrew from the case. And it's... I blame myself, you've gone way over. But let me... I need to ask you before you sit down the question, keep it short, do we really need to decide this issue? I mean, if in fact it is the case that absolutely whoever has the burden in this case, you lose. I mean, in other words, let's just posit that for a moment. I'm not saying you have to agree with it, but if wherever the allocation of the burden is, we determine that there has been no showing of prejudice as in the case itself, at that point, maybe the COA was improvidently granted. Well, I mean, no, the COA isn't granted based upon a review, a quick review. Yes, right, true, true, right. This court sends cases back when a district court gets the standard wrong in a lot of other cases. And that's exactly where we are in this case. There are outstanding factual questions that the district court should be the one to resolve. So that is why this should be a two-step process. Here's the rule, here it goes back to the district court. All right, thank you. Thank you. Thank you for your fine arguments cases submitted. Thank you.